You may be seated. Mr. Bardavid. Good morning, Owners. May it please the Court, my name is Joshua Bardavid, attorney for Petitioner Miss Lin. Miss Lin's testimony was entirely credible and the negative credibility determination of the agency was not supported by the record in light of and did not account for the totality of the circumstances. The factor deemed most important in the immigration judge's determination that Miss Lin did not provide credible testimony was her failure to inform the Border Patrol agent upon her detention that she was subjected to a forced abortion in China. However, in making this finding, the IJA erred in several material ways. First, the immigration judge erred in calling this an inconsistency rather than what it really was, was at worst an omission. Wasn't that really the pivotal point of her claim? Yes, Your Honor. And she didn't inform the border agent of that? That is correct. She did not inform the border agent, but again, in making a negative credibility determination based upon that her failure to inform the border agent, the immigration judge was required to consider the totality of the circumstances. The immigration judge did not consider the purpose of this interview with the Border Patrol agent. This is not for the purpose of developing an asylum claim. This is for the purpose of enforcement, detention, and just creating the initial record of the apprehension. It is not to develop her claim. So when Miss Lin said that the Border Patrol agent cut her off, told her, tell it to the judge, tell your story to the judge, in finding that explanation not believable, the immigration judge did not consider the circumstance and the purpose of the interview, whether the fact that this interview was not for the asylum purpose would, in fact, support Miss Lin's explanation that the border agent cut her off. Secondly... Let me ask you this. There was a second hearing in this case, was there not? That's correct, Your Honor. And didn't the border agent appear at that hearing? No, Your Honor, and that's part of the matter. Miss Lin... The evidence of this interview was presented at the final hearing, at Miss Lin's final hearing. The attorney for Miss Lin at the time objected to the evidence being admitted out of time. There's a 15-day rule, meaning that all evidence is supposed to be submitted 15 days prior to the hearing, and the government did not present the evidence timely. They presented it at the hearing. Miss Lin then asked for the opportunity to cross-examine the Border Patrol agent, and that opportunity was denied. She asked for a continuance. She asked for the opportunity to subpoena this agent if he was not willing to come and testify, and that request was denied. And so, where the immigration judge... This is not a circumstance of he said, she said. This is not a circumstance of the record of this interviewing contradicting Miss Lin, where the judge is free to rely on the Border Patrol's record. This is an instance where the record is silent as to Miss Lin's explanation. There is no indication on this paper whether or not the Border Patrol agent said, you know what, I don't want to hear the rest of your story. You're done. Tell it to the judge. Ms. Lin's counsel did have the information that was going to be presented at the hearing two months prior, right? January 31st, 2011, was given an opportunity to write a memo about whether or not it should have been considered two months prior to the hearing? He was given a separate typewritten account of the interview, but the actual handwritten notes of the interview where Miss Lin says, well, there wasn't enough space on the form, which in fact, it indicates there wasn't enough space, and where the issue of whether or not she was cut off, that all arose from the presentation of these documents at the hearing. And that's why Miss Lin then asked for the opportunity to cross-examine the Customs and Border Patrol agent. And this is particularly important where the judge said there is nothing but her self-serving testimony that she was cut off. And if the judge is saying that her testimony is being self-serving, and say, well, there's nothing else in the record. Do you have a record site to where there was a request to cross-examine? Yes, Your Honor. That was at the end of the hearing. I believe it's page 209 to 215, where that discussion occurs, at the very end of the individual hearing where he asked for the opportunity to do so. Well, that was not the only basis on which the immigration judge found against her. He found that her testimony, with many respects, was inconsistent, and he had a question as to whether or not the abortion certificate was credible or not. It wasn't authenticated, and she gave varying explanations as to why she went back to get it, one of which was that she wanted to take a vacation, and she needed it to take a vacation. Yes, absolutely, there were other areas that were raised by the judge, but we first have the problem of the fact the judge deemed focused as the most important aspect. So we have an open question of whether or not, cleansed of this error, the judge would reach the same determination. That is to say that whether or not the judge would find her not credible based strictly on if you were not to consider the fact that she failed to disclose this information or to find Ms. Lynn's explanation for failing to disclose this information credible. But yes, there were other areas raised, but with respect to the corroboration, the immigration judge didn't consider the other independent corroborating material. So if the immigration judge wanted to decline to consider the abortion certificate that she presented, he had an obligation then to consider the other material evidence in the record. Now, the government relies on the fact that the judge says, well, I've considered the record as a whole, yet he doesn't discuss any of the specific evidence. And what's important is, for example, the judge faults her for failing to present letters from her parents, and then gives no discussion of the fact that she presented letters from her mother-in-law, she presented letters from her husband. So if the judge is going to fault her for failing to present corroborating letters, he has at the very least the obligation to consider the fact that there were other evidence in the record. He can't just simply say, well, I've considered the totality of the circumstances. And this case law is well established in this court, from Camara to Tassi to Lynn, all of these cases stand for the proposition that the immigration judge, if he's going to deny for lack of credibility, has to consider whether there was other evidence in the record that corroborates the aspect of the claim. And here, where the immigration judge didn't even so much as mention the corroborating letters, didn't so much as mention the fact that there was an IUD certificate in the record, didn't so much as mention the fact that there was a fine receipt which indicated that Ms. Lynn was being fined for, quote, violation of the family planning policy, didn't consider whether these independent documents corroborated her claim and rehabilitated whatever remaining questions the immigration judge had with respect to Ms. Lynn's credibility. For all these... He had some confusing testimony about her marriage, did she not? Yes, Your Honor. She said that it wasn't legitimate, it wouldn't be recognized because they didn't have a banquet or something to that effect. And yet her husband, in his letter, he said that they were legally married and that the marriage was good and was recognized in China. That's correct, Your Honor. She indicated that her... both her and her husband indicated that the marriage was registered. She said the reason she didn't consider herself to be legally... to be married was because it had not had a religious ceremony or they had not had a banquet or a celebration. Simply, in her mind, the registration of the marriage did not make her married is what her explanation was. Who should we believe, the husband or her? Well, I don't think that it's necessarily an inconsistency that the husband and wife have a different understanding of their marital status. I think her explanation as to why she didn't consider herself married... She was Chinese just as she was, or is. But simply, it's not necessarily just a cultural thing. I think it can be a personal, individual feeling. And again, this is a relatively, you know, minor aspect. And while under the REAL ID Act, minor inconsistencies can be considered, again, there is this requirement of the totality of the circumstances. And considering that the immigration judge deemed the most important inconsistency, which wasn't an inconsistency at all, was her failure to mention the forced abortion to the Border Patrol agent. And that finding was erroneous. At the very least, the matter should be remanded in order to determine whether or not the judge would still consider her not credible in light of the fact that his determination with respect to the Border Patrol was erroneous. Well, let's go back to the marriage. Before the immigration judge, she admitted that she knew the Chinese government considered her to be married based on the registration of her marriage. Yes, but there's a difference. As did her husband. That's correct, yes. But there's a difference between what the Chinese government feels, or believes, or considers, and what she feels, and believes, and considers. And that's her explanation. And that's why she stated that she wasn't married, was because she didn't consider herself. There's a difference, again, between what her husband feels. And this is not an inconsistency. This is just a matter of different interpretation. Unless the Court has any further questions, I have remaining time, which I'll reserve for the rebuttal. All right. Thank you, Mr. Barnaby. Mr. Robbins. Good morning, Your Honors. May it please the Court, Jonathan Robbins here on behalf of the respondent, Eric Holder. Good morning. Obviously, the record compels reversal of the agency's adverse credibility finding. And frankly, I think this Court would be hard-pressed to find a more well- supported, more well-reasoned adverse credibility finding than the one that the immigration judge gave in this case. Your Honors already noted all the inconsistencies with respect to whether or not she was married. You know, there's the major omission before the Border Patrol agent. Is there any question that she is married now? That she's married to her husband? Yes. Not right now. No, there's no . . . That's not in dispute, right? Correct. So, the credibility . . . if that's the credibility issue, what difference does that make? It's now resolved that she's married. I mean . . . Right. But the credibility issue is what she first told the Border Patrol agent. When she first got into the country and was asked . . . Well, let's say that if she wasn't married, would that change her status of what she was requesting from the government? Let's suppose if she went through everything she went through, but she wasn't married, would that change? If she had actually underwent a forced abortion and was single, yes. That would . . . I mean, that would not change her claim that she would be persecuted. Right. So, the issue that you say is the deal of credibility, one, is not in dispute now. And even if it was a question, it's not even material to what she's requesting. So, what's the motive? It absolutely is material. Why is it material? Because when she first came into the country and told the Border Patrol agent and was questioned about why she was coming to the country, she told them that she was afraid to go back to China, not because she underwent a forced abortion. She didn't mention anything about that. What she said was that she had a child out of wedlock, that she wasn't married at that time, and she was afraid she wouldn't be able to get married. Now, this is in direct conflict with her testimony when she went before the immigration judge where she said, oh, yes, I was married at the time. I had a child after I was married. So, this is in direct conflict about the very crux of her claim. So, that's absolutely relevant to whether or not she's credible. And this is at a border. She's just gotten to the country, foreign country, language problems. There's no alleged language problem in this case, Your Honor. She's never made any allegation that the translator was inaccurate or that the translator put down anything that she said was wrong. The fact that you have a translator is a language problem. Well, she hasn't alleged that the substance of what she told the Border Patrol agent isn't accurate. She's just giving different assertions for why she gave those answers. And that isn't a question of the accuracy of what she told them. That's a question towards the immigration judge shouldn't have given weight to this. And that's an issue under this standard of review. Does the record compel one conclusion or the other? The court should be deferring to the immigration judge's view of that evidence. Well, I agree. Certainly, it's an uphill battle for anybody in this situation. It's sort of in terms of what the burden is. But the question is, how much weight is to be given to inconsistencies that come out because it's different from what they told at the border, sort of airport interview, so to speak. It seems like a lot of weight was given to that. Very little weight to what was given at the hearing that she said. Well, when an immigration judge looks and determines how much weight is to be given to various parts of evidence, what they're looking at is the totality of the circumstances. And here, the immigration judge gave them an opportunity, an additional hearing, to prepare themselves to rebut this evidence that had come in admittedly late, as the government did file it late. But again, the immigration judge has discretion to allow evidence, like all judges have discretion to allow evidence beyond a certain time limit. And the immigration judge gave them an opportunity to rebut. My colleague here mentioned that they had requested an opportunity to I didn't see that anywhere in the record. And the site from page 209 and to the end, I don't see any request to specifically question the Border Patrol agent. There certainly isn't any request to call the Border Patrol agent as a witness in their written memo when they had an opportunity to respond to this evidence for the first time. And I didn't see it in the discussion at the end of the hearing either. It's possible I've missed it or overlooked it, but I haven't seen it. And again, they certainly had the opportunity to do so had they wanted to, had they wanted to be able to rebut that evidence. But that's not what they did. Is the authenticity of the abortion question here? I'm sorry, what? The abortion certificate. Is the authenticity question here? Well, the immigration judge noted that the State Department reports, the State Department is not aware of any so-called abortion certificates being issued, and the immigration judge specifically noted that. There are, according to the reports, some documents that are issued with China that they would get two weeks of vacation time. That's in the State Department reports. But again, that goes to a major inconsistency in Petitioner's claim here. Because when she claimed that she wanted to get that certificate to get a vacation, they said, well, that doesn't make any sense. You're self-employed. And then she changed her answer and said, oh, well, actually, I plan to apply for asylum in the United States. So that goes to another inconsistency. I mean, when you look at this case and you want to see a textbook case of a I mean, this is a textbook case. I mean, you have the major omission before the Border Patrol agent, where she doesn't mention anything. What's the major omission? What is the major omission? She didn't state that when asked if she feared to go back to China, she didn't mention that she underwent a forced abortion. That's the main point in her entire claim. And, in fact, she made a different claim. She made a different claim. She said to avoid population control regulations in China. Yes, but if you read the notes in the Border Patrol agent, she didn't claim that she underwent a forced abortion. She claimed that she had a child out of wedlock and was afraid she wouldn't be able to get married. That's a completely different claim. She asked at the Border Patrol interview about past persecution or only about fears for the future. If you're somebody who has just come into this country, who said she's fearful, needs an interpreter, says she was afraid because there were firearms there, was feeling ill, and was given limited opportunity and told that she would have an opportunity to tell her story more fully later, how is that an omission when she's not asked about past persecution, given all those circumstances? Doesn't that sort of interview deserve more scrutiny? Had she not said anything, perhaps that might, and if she had alleged she had actually undergone duress, which she doesn't allege, she doesn't allege that this isn't accurate, what she said. But what she said is something entirely different, an entirely different claim. She claimed that she had a child out of wedlock, which is in contradiction to her other testimony, and that she was afraid she wouldn't be able to get married. So it's one thing if the question wasn't clear and she hadn't said something, then maybe the court would have something to look at there and say maybe that wasn't fair. That's not what happened here. She gave an entirely different account for why she was coming to the United States from China. And again, under the standard of review, can the court say that the immigration judge was absolutely wrong in saying that this wasn't credible, given the fact that she'd given an entirely different reason for coming to the United States? I don't think that can be reasonably argued, given the standard of review, that the record must compel a contrary conclusion. With respect to, I guess I think that pretty much covers all the issues, unless I'm forgetting anything, unless there are any specific questions. Mr. Robbins, you're saying that when reviewing this petition, we should review it in light of the finding that the hearing officer did not believe she had an abortion. Is that right? I'm sorry, the immigration judge or the border patrol judge? The judge. Did not believe she had an abortion. Yes. And so unless there are any other specific questions with respect to the . . . Okay, well then I will respectfully request that the government . . . the government's position is that the court should affirm the decision of the Board of Immigration Appeals. And thank you very much for your time, Your Honors. Thank you, Mr. Robbins. Mr. Bardavid, you have some time reserved. With respect to the immigration judge's determination, as the government focused on her failure to inform the border patrol, the questions that were raised by Your Honor are all part of the totality of the circumstances. And the error of the judge was not just making this finding. It was his failure to consider the totality of the circumstances. That Ms. Lynn explained that a gun was drawn on her. She was feeling nauseous. She wanted to throw up. She was frightened. None of that was discussed by the immigration judge. Ms. Lynn . . . But it was in the record. It was in the record. And the judge said, I consider the totality of the circumstances, and that's what the government . . . How can you assume that that wasn't considered? And if it's in the record and he said he considered the totality, how do we do that? Because simply saying, I consider the totality of the circumstances, well, that's a requirement. But when the judge is giving a discussion as for his reasons for rejecting her explanation, he needs to consider parts of her explanation.  And the Border Patrol agent told me, you know, tell it to the judge. He didn't mention the fact that Ms. Lynn also explained that she was nauseous. She was dizzy. He didn't consider at all, no discussion, no mention of the fact that nine days later, when she's interviewed more fully, when she's interviewed part of the asylum process . . . And again, this is before she has counsel. This is before she's met with anybody. She's still in detention. And she's asked about her past persecution. She mentions the abortion. When she's asked about her future fear, her answer is actually almost identical. It's almost identical to what she told the Border Patrol agent, that she fears that if she has any more kids, she's going to be . . . the pregnancy would be forcibly aborted. That's what she told the Border Patrol agent. And at this credible fear interview, when she's asked about her future fear, she says the exact same thing. She mentions nothing about the past persecution. But at the same interview, when she's asked about her past persecution, she does discuss the forced abortion. And with the immigration judge predicating his credibility determination on the most important, in his words, the most important inconsistency, which was actually an omission, the judge needs to consider these factors, where he says he's considering some factors, but makes no mention of others. And that's the error. It's not just the finding, but it's the failure to consider these factors. Mr. Bardee, to respond to this, as I see it, the toughest part, the case I want to give a chance to Farrah, because the core of the case is whether or not there was past persecution, which is a forced abortion. And explaining why she had the certificate, because that was pretty, you know, precise on her part, to get that in her head, because she might need it in the future, correct? That's correct. And she had enough, you know, like I say, prejudgment to do that. And I know there's a language barrier. There's all of the circumstances of the airport sort of interview. But how do you take the fact that that's the, as the French would say, the piece de resistance. This is the time when you need it, even all those barriers and all those circumstances. If nothing, you can mutter out, but I had an abortion. I was forced to have an abortion, in her language, however she can cry that, because she did talk about other things like the marriage, and you explained that. But can you explain how does the judge deal with that core allegation and crux? How do you deal with that? Why she didn't show the Border Patrol agent the certificate? It's in light of the fact that she had already planned that one day I will need this. This is the day. Undoubtedly, common sense would say that's what she should have done. But her explanation, and which was not considered by the judge, was that she was dizzy. She was nauseous. The Border Patrol agent had pulled his gun and aimed it at her. She's not thinking clearly, and she's asked a question about her future fear, and she talks about her future fear. She's not asked about her past fear. You would think that she would say, look, here's my certificate, but she didn't do that. But nine days later, when she's in a much more calm setting, and she has the opportunity to be asked about her past persecution, she does talk about it, and she does explain it, and she does say, look, I was pregnant, the Chinese government dragged me away, and they forcibly aborted my pregnancy. Let's go forward to the second hearing. Now, at that hearing, she didn't challenge the report that the Border Patrol agent made out. She didn't challenge it at all, and she didn't object to the admission of that report into evidence. She does actually object to the admission of that. To be clear, yes, Your Honor, she does not challenge the accuracy of the contents of that report. She admittedly, readily admits that she did not tell the Border Patrol agent at the time she was detained about the forced abortion. She did object to the timeliness of the evidence, but she does not object to the contents and does not challenge the contents. But again, where the judge is— So the timing of the evidence went to what, the admissibility of the report? Yes. Well, the report was a document made in the course of ordinary business and was clearly admissible under our law. Under the— And she didn't challenge that. Under the Immigration Court Practice Manual, evidence is supposed to be provided 15 days late. The government attorney actually admits that she erred in filing the documents late. But that is—Your Honor, I would concede that it's largely irrelevant because at the end of the day, she is not challenging the accuracy of it. What she is challenging is the failure of the judge to consider the other factors in reaching his negative credibility determination. Unless the Court has any further questions, we'll rest on a breeze. Thank you so much, Counsel. Thank you. We'll come down to Greek Council and proceed to—
judges: Roger L. Gregory, Stephanie D. Thacker, Clyde H. Hamilton